James H. Kaster*, MN Bar. No. 053946
kaster@nka.com
David E. Schlesinger, AZ Bar No. 025224
schlesinger@nka.com
Lindsey E. Krause*, MN Bar No. 0398431
lkrause@nka.com
NICHOLS KASTER, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel: (612) 256-3200
Fax: (612) 215-6870
* *admitted pro hac vice*

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA**

Thomas Montgomery and Myshell Molina, husband and wife,

Plaintiffs,

v.

Union Pacific Railroad Co.,

Defendant.

Case No.: CV-17-00201-TUC-RM

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURCATE THE TRIAL INTO LIABILITY AND DAMAGES PHASES**

Plaintiffs Thomas Montgomery and Myshell Molina respectfully request that the Court bifurcate trial in this matter into separate liability and damages phases pursuant to Federal Rule of Civil Procedure 42(b) to promote judicial economy and to avoid severe prejudice to Plaintiffs that will undoubtedly exist if the question of Defendant Union Pacific Railroad Co.'s ("Union Pacific") liability and Plaintiffs' resulting damages are tried together.

**STATEMENT OF RELEVANT FACTS**

This case involves claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* and the Genetic Information Nondiscrimination Act ("GINA"), 42 U.S.C. § 2000ff, *et seq.*, stemming from Union Pacific's refusal to hire Montgomery for a Train Crew position due to his disability and/or Union Pacific's perception that Montgomery was disabled.

Montgomery applied for a position on Union Pacific's Train Crew in Tucson, Arizona, on August 8, 2014. (Defendant's Statement of Undisputed Material Facts ("DSOF"), Dkt. 60, at ¶ 23.) On his application, Montgomery listed as his part of his employment history "Gale contractor," referencing a position as a Production Manager at Gale Insulation he had held for nearly 20 years. (Exhibit 5 to DSOF, Dkt. 60-6, at UPRC_Montgomery000598.) In response to "Reason for change," Montgomery stated "Downsizing." (*Id.*) Furthermore, in response to the question, "Have you ever been fired, asked to resign, forced to leave a position, or had your employment involuntarily terminated in the last two (2) years? If so answer 'yes.' Answer 'no' to this question if the situation was considered a layoff or job elimination.? [sic]" Montgomery answered "NO." (*Id.* at UPRC_Montgomery000599) Finally, in response to the question "Have you been disciplined for any work related safety violations in the past two years??" Montgomery answered "NO.") (*Id.*) Thereafter, Montgomery received a conditional offer of employment from Union Pacific on October 23, which he accepted three days later. (Exhibit 7 to DSOF, Dkt. 60-7, at UPRC_Montgomery000293). Union Pacific rescinded its conditional job offer to Montgomery on December 23, 2014, because Union Pacific

had “determined that [his] current medical condition present[ed] significant and imminent risk of substantial harm to [himself] or others if [he] were to perform in the position of train crewman.” (Ex. 11 to the Declaration of David E. Schlesinger (“Schlesinger Decl.”), Dkt. 67-11, at UPRC_Montgomery000238.) Union Pacific did not reference any other reason for its decision. (*Id.*)

Montgomery was deposed by counsel for Union Pacific on March 27, 2018. In his deposition, Montgomery testified that his employment with Gale Insulation ended because he was terminated for violating a standard operating procedure—taking his work-issued truck home with him—and not due to downsizing. (Exhibit 9 to Schlesinger Decl., Dkt. 67-9, Montgomery Dep. at 40:25-41:3; 54:1-7.) There is no evidence in the record to suggest that Union Pacific knew of this alleged misstatement at the time it refused to hire Montgomery for the Train Crew position.

Additionally, through discovery, the parties obtained documents from BNSF indicating that Montgomery was involved in a car derailment on May 5, 2014. (Exhibit 1 to the Declaration of Lindsey E. Krause (“Krause Decl.”), BNSF00007-8,) However, these documents also indicated that Montgomery participated in BNSF’s Alternative Handling process, a non-disciplinary response to rule violations, and record of this incident did not appear on Montgomery’s employment record. (*Id.*; Exhibit 2 to the Krause Decl., Memorandum of Agreement Between BNSF and United Transportation Union (2002).) There is no evidence in the record to show that Union Pacific knew of this incident at the time it made its decision with respect to Montgomery. Union Pacific’s proposed exhibit and witness list indicates that it plans to utilize this information to

present an after-acquired evidence defense, a defense that, if successful, would cut off damages but not impact liability.

Union Pacific also intends to introduce evidence of Montgomery's termination from USI, a job he held in 2015, in order to show that Montgomery failed to mitigate his damages due to his termination. Plaintiffs' response to this argument is addressed in a separate motion *in limine* filed contemporaneously with this motion; however, this issue also supports the appropriateness of bifurcation in this case. Furthermore, to the extent Union Pacific argues that Montgomery's termination from USI is relevant after-acquired evidence, it should be included in the Court's determination of this motion. Additionally, Union Pacific also intends to introduce evidence related to statements made by Montgomery to employers about his termination from Gale Insulation. Plaintiffs' response to this argument is also addressed in a separate motion *in limine*; however, to the extent Union Pacific argues this evidence is relevant after-acquired evidence, it should be included in the Court's determination of this motion. If Defendant is permitted to present any of these issues, it should only be permitted to do so in the damages phase of this case.

## ARGUMENT

The doctrine of after-acquired evidence has limited applicability. *O'Day v. McDonnell Douglas Helicopter Company*, 79 F.3d 756, 759-760 (9th Cir. 1996). The Supreme Court has held that after-acquired evidence *is not* a defense to liability, and can only affect the remedies that a plaintiff can recover. *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 361-62 (1995). Furthermore, the Ninth Circuit has recognized that "information about [an employee] which was unknown to [the employer] at the time of

the decision was made could not have entered into the calculus of the decision and would be entirely irrelevant." *Norris v. City of San Francisco*, 900 F.2d 1326, 1331 (9th Cir. 1990) (internal citation omitted). Liability rests on whether Union Pacific's rejection of Montgomery, when it occurred, was *then* motivated by illegal discrimination, not whether Union Pacific can now articulate some hypothetical nondiscriminatory reason for its decision. *See, e.g., Cuddy v. Carmen*, 762 F.2d 119, 127 (D.C. Cir. 1985). In other words, "[t]he employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason." *E.E.O.C. v. High Speed Enterprise, Inc.*, 833 F.Supp.2d 1153, 1161 (D. Ariz. 2011) (quoting *McKennon*, 513 U.S. at 359-60). After-acquired evidence *does not* defeat liability. *Id.* (internal citations omitted) (emphasis added). Nor does after-acquired evidence does not provide a complete bar to damages: The Ninth Circuit has recognized that "it would be inequitable to hold that after-acquired evidence of misrepresentations in a job application should preclude an otherwise successful plaintiff from recovering damages." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 901 (9th Cir. 1994). *See also Serrano v. Cintas Corp.*, 699 F.3d 884, 904 (6th Cir. 2012) ("[W]e do wish to emphasize that the consideration of individual applicants' dishonesty should be reserved for the remedial portion of the proceedings.").

"After-acquired evidence" in this case relates to at least the following:

- Montgomery's statement on his application to Union Pacific that his separation from Gale Insulation was due to downsizing;

- Montgomery's statement on his application that he had not been terminated from employment in the past two years;

- Montgomery's later statement that he was terminated from Gale Insulation due to violating a standard operating procedure;

- Montgomery's statement on his application that he had not been disciplined for any work-related safety violations in the past two years;

- Evidence of Montgomery's safety-related incident at BNSF; and

- To the extent Union Pacific treats it as such, Montgomery's termination from USI.

Due to the certainty of prejudice and confusion to the jury if presented with after-acquired evidence at an inappropriate juncture in the trial, the Court should bifurcate the proceedings. "For convenience, to avoid prejudice, or to expedite and economize," the Court may "order a separate trial of one or more separate issues . . .." Fed. R. Civ. P. 42(b). "Only one of Rule 42(b)'s requirements must be satisfied for the court to bifurcate a trial." *Pinal Creek Group v. Newmont Mining Corp.*, 218 F.R.D. 652, 654 (D. Ariz. 2003), *rev'd on other grounds*, 523 F.3d 924, 927 (9th Cir. 2008). District courts should decide whether to bifurcate on a case-by-case basis. *Id.* at 658 (internal citation omitted).

The Ninth Circuit has long recognized a trial court's ability to separate a trial into liability and damages phases under Rule 42(b), and its broad discretion to do so. *See M2 Software, Inc. v. Madacy Entertainment*, 421 F.3d 1073, 1088 (9th Cir. 2005); *Arthur Young & Co. v. United States Dist. Court*, 549 F.2d 686, 697 (9th Cir. 1977). *See also, e.g., Arrigo v. Link Stop, Inc.*, 2014 WL 12726064, *3 (W.D. Wis. Apr. 22, 2014) ("In

addition, to the extent that an after-acquired evidence defense could confuse the jury on issues related to liability, the easy solution to this is a bifurcated trial."); *Redvanly v. Automated Data Processing, Inc.*, 407 N.J. Super. 395, (App. Div. 2009) (in liability phase there should be no proof, or even mention of, the after-acquired evidence defense). *See also* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2390 (3d ed. 2016) ("The separation of issues of liability from those relating to damages is an obvious use for Federal Rule 42(b)."). The Ninth Circuit has held that the "use of after-acquired evidence during the liability phase of trial would flout the broad congressional objective of eradicating workplace discrimination." *Junot v. Maricopa County*, 67.F3d 307 (Table), 1995 WL 579636, *2 (9th Cir. 1995).

Here, the issues are separable. The crux of Union Pacific's arguments with respect to Montgomery's damages relate to after-acquired evidence, which, as explained herein, is "entirely irrelevant" to determining liability. *Norris*, 900 F.2d at 1331. Furthermore, separation of liability and damages phases will likely "reduce the types and amount of evidence to be produced in each phase of trial [thus] promot[ing] judicial economy and reduc[ing] the risk of judicial confusion." *Bates v. United Parcel Service*, 204 F.R.D. 440, 449 (N.D. Cal. 2001). While the overall narrative of the case provides the backdrop for both phases, there is little overlap between the specific facts that relate to liability and the specific facts that relate to a calculation of damages. This is especially true given Union Pacific's intended reliance on after-acquired evidence.

Relatedly, bifurcation of the trial into liability and damages phases will not prejudice Union Pacific. Bifurcation will not require Union Pacific to re-engage with its

expert witnesses, nor will it require Union Pacific to re-hash the most complicated facts of this case: those related to Montgomery's medical condition. Furthermore, because an after-acquired evidence defense is naturally separated from Union Pacific's other liability-related defenses, arguing the trial in a distinct, sequential order may allow the parties to avoid the time-consuming process of litigating after-acquired evidence altogether if a jury determines that Union Pacific is not liable to Plaintiffs. *See, e.g., Jinro America Inc. v. Secure Investment, Inc.*, 266 F.3d 993, 998 (9th Cir. 2001) (A court may elect "to bifurcate a trial to permit deferral of costly and possibly unnecessary proceedings pending resolution of potentially dispositive preliminary issues.") If the jury determines Union Pacific is liable, then—and only then—will the introduction of after-acquired evidence become relevant.

Most importantly, bifurcation in this case serves to avoid certain prejudice to Plaintiffs that comes if this after-acquired evidence and evidence of Montgomery's subsequent termination is introduced in any capacity other than related to calculation of damages. If this trial is not bifurcated, Union Pacific would seek to leverage after-acquired evidence to open the floodgates to facts wholly irrelevant to Union Pacific's liability, painting Montgomery as a dishonest person scamming to get a job. Such attacks are the embodiment of prejudicial evidence – excludable under Fed. R. Evid. 403 – and must have no influence on the jury's decision with respect to the question of Union Pacific's liability. Furthermore, evidence that was not known to Union Pacific at the time of its decision cannot be relevant to the question of whether the choice not to hire Montgomery was made because of Montgomery's disability or Union Pacific's perception

that he was disabled. *See* Fed. R. Evid 401 ("Evidence is relevant if . . . the fact is of consequence in determining the action."). In this case, a limiting instruction would not be sufficient to avoid the effect this evidence may have on the jury's perception of Montgomery. Any suggestion to Montgomery may have engaged in dishonest behavior – despite questions surrounding the materiality of his misstatements[1] – will certainly, and unnecessarily, poison the well.

Finally, it is important to consider this case in the context of other similar cases against Union Pacific. Though this is an individual case, it does not exist in a legal vacuum. This case is part of a larger litigation effort to hold Union Pacific liable for discriminatory practices stemming from its fitness-for-duty and medical policies.[2] Because of this larger landscape, obtaining a clear result on liability—free from waters unnecessarily muddied by after-acquired evidence—is important to the parties. Furthermore, getting a precise decision on liability will foster general judicial economy and will allow for relevant precedent to build, streamlining future litigation.

---

[1] *See E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 901 (9th Cir. 1994) (internal citation omitted) (recognizing materiality of application fraud as an appropriate consideration in after-acquired evidence context). Plaintiffs will argue that Montgomery's misstatements on his job application were not material and are distinguishable from the comparator information Union Pacific seeks to introduce.

[2] In *Harris et al. v. Union Pacific Railroad Co.*, the Court recently granted class certification to a class of Union Pacific employees who have been impacted by Union Pacific's fitness-for-duty and reportable health events policies. 8:16-cv-00381-JFB-SMB, Dkt. 307 (D. Neb. Feb. 5, 2019). Plaintiffs' counsel was appointed as class counsel. *Id.* Relatedly, several individual ADA cases against Union Pacific, all concerning Union Pacific's medical policies, are currently pending in jurisdictions across the country. *See, e.g., Witchet v. Union Pacific Railroad Co.*, 8:18-cv-00187 (D. Neb.); *Campbell v. Union Pacific Railroad Co.*, 1:18-cv-00522-EJL (D. Ida.); *Lewis v. Union Pacific Railroad Co.*, 1:18-cv-02955-MSK-CPG (D. Col.).

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court bifurcate the instant proceedings into separate liability and damages phases to promote judicial economy and to avoid certain undue prejudice to Plaintiffs if the after-acquired evidence is introduced at an inappropriate juncture.

Date: February 7, 2019

**NICHOLS KASTER, PLLP**

s/Lindsey E. Krause
James H. Kaster* (MN #53946)
kaster@nka.com
David E. Schlesinger (AZ # 025224)
schlesinger@nka.com
Lindsey E. Krause* (MN # 0398431)
lkrause@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878
* *admitted pro hac vice*

**ATTORNEYS FOR PLAINTIFF**

-10-

PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURCATE THE TRIAL INTO LIABILITY AND DAMAGES PHASES

**CERTIFICATE OF SERVICE**

I certify that on this February 7, 2019, **PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO BIFURCATE THE TRIAL INTO LIABILITY AND DAMAGES PHASES** was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to the following:

Scott P Moore
Allison D. Balus
Leigh Campbell Joyce
David E. Kennison
Baird Holm, LLP
1700 Farnam Street, Suite 1500
Omaha, NE 68102
spmoore@bairdholm.com
abalus@bairdholm.com
lcampbell@bairdholm.com
dkennison@bairdholm.com

s/Eric Doyle
Eric Doyle, Legal Assistant
NICHOLS KASTER, PLLP