James H. Kaster*, MN Bar. No. 053946
kaster@nka.com
David E. Schlesinger, AZ Bar No. 025224
schlesinger@nka.com
Lindsey E. Krause*, MN Bar No. 0398431
lkrause@nka.com
NICHOLS KASTER, PLLP
4600 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Tel: (612) 256-3200
Fax: (612) 215-6870
\*  *admitted pro hac vice*

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Thomas Montgomery and Myshell Molina, husband and wife,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>Union Pacific Railroad Co.,<br><br>　　　　Defendant. | Case No.: CV-17-00201-TUC-RM<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO BIFURCATE** |

　　　　Plaintiffs Thomas Montgomery and Myshell Molina, by and through their attorneys, respectfully file this reply memorandum in support of their Motion to Bifurcate. Defendant Union Pacific Railroad Company's ("Union Pacific") arguments against bifurcation are unpersuasive, and Plaintiffs respectfully request that the Court bifurcate trial in this matter into separate liability and damages phases in order to protect Plaintiffs from certain, severe prejudice if the issues are tried together.

-1-

# ARGUMENT

## I. Evidence of Montgomery's Alleged Misstatements Are Irrelevant to Liability and Must Be Reserved for Purposes of Damage Calculations Only

The law is clear: any after-acquired evidence should be limited to the calculation of damages, and should not be used to cloud the wrongfulness behind Union Pacific's refusal to hire Montgomery for the Train Crew position. This case is analogous to the situation in *McKennon v. Nashville Banner Pub. Co.*, where "an unlawful motive was the sole basis for the [employment decision]." 513 U.S. 352, 359 (1995). It is undisputed that Union Pacific rejected Montgomery for the Train Crew position solely due to his medical condition. As in *McKennon*, Montgomery's alleged misstatements "were not discovered until after [he] had been [rejected]. [Union Pacific] could not have been motivated by knowledge it did not have and it cannot now claim that [Montgomery] was [rejected] for the nondiscriminatory reason." *Id.* at 359-360.

In its attempts to utilize this after-acquired evidence at the liability stage, Union Pacific seeks to impose a stricter "qualification" requirement on Montgomery than is proper under the ADA. Under the ADA, an employee must satisfy the requisite skill, experience, education, and other job-related requirements of the employment position. 42 U.S.C. § 12112; 29 C.F.R. § 1630.2(m). According to guidance promulgated by the EEOC, "[j]ob-related requirements, also known as 'qualification standards,' may include . . . possessing specific training[,] possessing specific licenses or certificates[,] possessing certain physical or mental abilities . . . [,] meeting health or safety requirements[.] and demonstrating certain attributes such as the ability to work with other people or to work

-2-

under pressure." "The Americans With Disabilities Act: Applying Performance And Conduct Standards to Employees With Disabilities," EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, (December 20, 2017), https://www.eeoc.gov/facts/performance-conduct.html. There is no dispute that Montgomery met the basic job-related requirements and possessed the skills necessary to perform the Train Crew job, as evidenced by his experience at BNSF and his receipt of a conditional offer of employment. There is no evidence to suggest that the questions to which Montgomery allegedly provided untruthful answers are directly related to the skills necessary to perform the Train Crew position. At most, these questions serve as an arbitrary, company-imposed screening tool to reduce the applicant pool. *See, e.g., Awai v. Ethicon Inc.*, 2009 WL 10675230, \*2-\*3 (C.D. Cal. Dec. 16, 2009) ("[I]f the after-acquired evidence relates to an internal, self-imposed requirement, public policy dictates that the plaintiff be allowed some measure of relief for wrongful termination.") (internal citations omitted).

Even assuming, *arguendo*, that the Court accepts Union Pacific's contention that these screening questions go to the issue of qualification, the Ninth Circuit has interpreted *McKennon* to hold that "'after-acquired' evidence' of . . . qualifications was not admissible during the liability phase of trial." *Junot v. Maricopa* County, 191 F.3d 460 (Table), at \*1 (9th Cir. 1999). *See also Junot v. Maricopa County*, 67 F.3d 307 (Table), at \*2 (9th Cir. 1995) (holding that the district court's jury instruction indicating that "defendant may rely on information unknown at the time but learned later to show that plaintiff was not 'otherwise qualified' for the job" was nullified by *McKennon*). This Court has agreed:

-3-

> If after-acquired evidence were sufficient, standing alone, to warrant the grant of partial summary judgment to a defendant on the issue of whether the plaintiff is a 'qualified individual' under the ADA, the after-acquired evidence would effectively operate as an absolute bar to relief in the same way it would if it were a permissible affirmative defense. The grant of partial summary judgment solely on the basis of after-acquired evidence would, therefore, be in violation of the principles articulated in *McKennon*.

*Burkhart v. Intuit Inc.*, 2009 WL 528603, *12 (D. Ariz. Mar. 2, 2009) (holding that after-acquired evidence of an applicant's failure to disclose a felony conviction and other misstatements did not bar plaintiff from all relief under the ADA).[1] As such, this evidence must be reserved until *after* liability is established, and must only be used as it relates to a calculation of damages.

## II. <u>Utilizing This Evidence For Impeachment is Improper</u>

Union Pacific's intent to utilize the after-acquired evidence of Montgomery's alleged misstatements on his employment application for impeachment is also improper. Although Rule 608 allows examination of a witness regarding specific instances of conduct "if they are probative of the character for truthfulness or untruthfulness," the Advisory Committee Notes that accompany the Rule acknowledge that with such evidence "the possibilities of abuse are substantial." Fed. R. Evid. 608(6)(1). Therefore, such specific instances must not be too remote in time and must be considered under the general umbrellas of Rule 403 and Rule 611. *See, e.g., Vaughn v. City of Los Angeles*,

---

[1] *But see Anthony v. Trax International Corp.*, 2018 WL1811711 (D. Ariz. Apr. 17, 2018). In *Anthony*, the Court, in a footnote, held that after-acquired evidence as to a particular qualification is relevant to proving a plaintiff's *prima facie* case. However, *Anthony* failed to reference *Junot*, *Burkhart*, or any other case law within the Ninth Circuit in coming to this conclusion, relying, instead, on a Third Circuit case and a case from the District of North Dakota. *See id.* at *4 n. 2. This case is currently on appeal before the Ninth Circuit.

-4-

2017 WL 8786868, *2 (C.D. Cal. Oct. 30, 2017) (excluding evidence of a false statement made seven years ago and acknowledging the context in which the statement was made). As further articulated in Plaintiffs' initial memorandum in support of the Motion to Bifurcate and above, this evidence has little to no probative value to determining liability in this case. Furthermore, the statements at issue were made nearly five years ago, and Defendant can provide no other, more recent situational evidence to suggest that Montgomery possesses a general reputation for untruthfulness. Moreover, Montgomery's credibility does not go "to the heart of" Union Pacific's defense, or the ultimate question of whether Union Pacific acted in a discriminatory fashion. *See, e.g., U.S. v. Hernandez*, 618 Fed. Appx. 319, 321 (9th Cir. 2015) (citing *United States v. Moran*, 493 F.3d 1002, 1014 (8th Cir. 2007)). *See also Adrian v. New York City Transit Auth.*, 1997 WL 1068713, *3 (E.D. N.Y. June 13, 1997) (The use of after-acquired evidence to impeach plaintiffs' credibility, when the "claims challenge presumably well-documented decisions of the [defendant]" is improper. Furthermore, "[t]o permit cross-examination on the after-acquired evidence with respect to [plaintiffs' credibility], but disallow consideration of that same evidence with regard to [defendants' burden to show its employment decisions were justified] would significantly blur findings to be made by the trier of fact."). As such, this evidence must not be admitted during the liability phase, even for the limited purpose of impeachment.

### III. Prejudice to Plaintiffs Will Not Be Remedied by a Jury Instruction.

When considering a motion to bifurcate, "prejudice is the Court's most important consideration." *See Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 2007 WL 3208540, *1 (D. Ariz. Oct. 30, 2007) (citing *Laitram Corp. v. Hewlett-Packard Co.*, 791 F.Supp. 113, 114 (E.D. La. 1992) (allowing the trial to proceed at three distinct phases: liability, damages, and willfulness)). If the evidence of Montgomery's alleged untruthfulness is presented to the jury, it would be so prejudicial that the jury may have difficulty finding in Plaintiffs' favor, despite the fact that such evidence is not for the jury's consideration when determining liability and has no bearing on whether Union Pacific acted discriminatorily. A limiting instruction will not shield Plaintiffs from this prejudice. *See, e.g., Adrian*, 1997 WL 1068713, at *4 ("[T]he probative value of [after-acquired evidence] for impeachment purposes is substantially outweighed by the prejudice plaintiffs would suffer as a result of their introduction.") Merely hearing such evidence has the propensity to unnecessarily poison the well against Montgomery and prevent the jury from fairly deciding whether Union Pacific's failure to hire Montgomery – admittedly due to his medical condition – was unlawful.

### CONCLUSION

For the foregoing reasons, and for the reasons articulated in Plaintiffs' initial memorandum, Plaintiffs' Motion to Bifurcate the Trial into Liability and Damages Phases must be granted.

-6-

PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO BIFURCATE

Date: March 14, 2019

**NICHOLS KASTER, PLLP**

s/Lindsey E. Krause
James H. Kaster* (MN #53946)
    kaster@nka.com
David E. Schlesinger (AZ # 025224)
    schlesinger@nka.com
Lindsey E. Krause* (MN # 0398431)
    lkrause@nka.com
80 South Eighth Street
4600 IDS Center
Minneapolis, Minnesota 55402-2242
Telephone: (612) 256-3200
Fax: (612) 338-4878
*   admitted pro hac vice

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on this March 14, 2019, **PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO BIFURCATE** was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to the following:

>Scott P Moore
>Allison D. Balus
>Leigh Campbell Joyce
>David E. Kennison
>Baird Holm, LLP
>1700 Farnam Street, Suite 1500
>Omaha, NE  68102
>spmoore@bairdholm.com
>abalus@bairdholm.com
>lcampbell@bairdholm.com
>dkennison@bairdholm.com


>s/Eric Doyle
>Eric Doyle, Legal Assistant
>NICHOLS KASTER, PLLP