1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                  **FOR THE DISTRICT OF ARIZONA**

8

9    Thomas Montgomery, et al.,                No. CV-17-00201-TUC-RM

10                  Plaintiffs,                **ORDER**

11   v.

12   Union Pacific Railroad Company,

13                  Defendant.

14

15         Pending before the Court are the parties' Motions in Limine (Docs. 80, 81, 82, 83,

16   84, 85).[1]  The motions are suitable for determination without oral argument.

17   **I.    Background**

18         This lawsuit arises from Defendant Union Pacific Railroad Company's decision to

19   rescind a job offer to Plaintiff after learning that Plaintiff had suffered a brain aneurysm

20   less than three years prior.  Plaintiff brings three claims.  In Count One, he alleges that

21   Defendant rescinded his job offer based on disability in violation of the Americans with

22   Disabilities Act ("ADA"), 42 U.S.C. § 12112(a).  In Count Two, Plaintiff alleges that

23   Defendant's policy to not hire individuals who have a sudden risk of incapacitation greater

24   than 1% per year constitutes unlawful screening in violation of the ADA, 42 U.S.C. §

25   12112(a) and (b)(6).  In Count Three, Plaintiff alleges that Defendant unlawfully requested

26   his family medical history in violation of the Genetic Information Nondiscrimation Act

27   ("GINA"), 42 U.S.C. § 2000ff-1(b).

28   _____

         [1]    The Court previously granted Plaintiff Thomas Montgomery's pretrial
     motion to bifurcate the trial into liability and damages phases.

## II.     Plaintiff's Motions in Limine

### A.     Whether Plaintiff is Disabled

ADA claims require, among other things, proof that the plaintiff "is disabled within the meaning of the ADA." *Nunies v. HIE Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018), *as amended*. "The term 'disability' means . . . (A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Id.* (quoting 42 U.S.C. § 12102(1)(A)–(C)). A person is "regarded as having such an impairment" if "the individual establishes that he or she has been subjected to an action . . . because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Plaintiff argues that Defendant should be precluded from arguing that he is not disabled because, regardless of whether he is actually disabled, 42 U.S.C. § 12102(1)(A), he was regarded as being disabled when Defendant rescinded the job offer based on perceived risk of sudden incapacitation, *id.* § 12102(1)(C). Defendant complains that Plaintiff's motion is a disguised (and untimely) motion for summary judgment and argues that Plaintiff must prove all elements of his claim.

The motion will be denied. Defendant has not conceded that Plaintiff is disabled or that it regarded Plaintiff as disabled. It is Plaintiff's burden to prove each element of his claims. This includes whether he meets the ADA's definition of "disabled."

### B.     2017 Meta-Analysis

During discovery, Dr. John Holland opined, based in part on a 2017 meta-analysis, that Plaintiff's risk of sudden incapacitation was approximately 5%. Plaintiff argues that the meta-analysis should be excluded because it was published approximately three years after the decision to rescind his job offer, and all other testifying doctors and experts dispute the meta-analysis' relevance. Defendant concedes that its direct-threat defense must be analyzed based on information available at the time of the employment decision but argues that after-the-fact medical studies are nevertheless relevant to whether the decision was

objectively reasonable.  Defendant also raises a fairness argument, pointing out that Plaintiff's counsel refuses to agree to not present evidence favorable to Plaintiff but also not available at the time of the employment decision, i.e., that Plaintiff suffered no neurological incidents following the employment decision.

The motion will be denied.  Expert evidence offered after the employment decision may be relevant to "whether the opinion that a direct threat existed was *objectively* reasonable." *Echazabal v. Chevron USA, Inc.*, 336 F.3d 1023, 1033 (9th Cir. 2003) (emphasis in original) (admitting after-the-fact expert opinions).  Furthermore, although the meta-analysis itself was not available at the time of the employment decision, Plaintiff has not established that "the body of medical knowledge" contained in the meta-analysis "was not available at the time, i.e., was beyond the then 'most current medical knowledge.'"  *Id.*  Finally, the Court disagrees that the meta-analysis' relevance is substantially outweighed by any of the factors set forth in Rule 403.

## C.  Train Accidents

Defendant presented evidence of two train accidents in connection with its motion for summary judgment.  The first accident was caused in part due to untreated sleep apnea.  The second accident was caused by sudden incapacitation due to seizure.  Plaintiff argues that evidence of these accidents (in the form of official reports) is irrelevant for two reasons: (1) the causes of the accidents were not determined until after Defendant's employment decision and thus could not have factored into the decision, and (2) the conditions that caused the accidents (sleep apnea and seizures) are different from the subarachnoid hemorrhage suffered by Plaintiff.  Plaintiff also argues that evidence of catastrophic train accidents is unduly prejudicial under Rule 403.  Defendant responds that the train accidents have relevance external to the employment decision and that its primary concern is the risk of sudden incapacitation, not the specific medical condition that may cause sudden incapacitation.

The motion will be denied.  Evidence of train accidents caused by sudden incapacitation is relevant to Defendant's direct-threat defense, which requires examination

of "[t]he nature and severity of the potential harm" if the job is not safely performed. 29 C.F.R. § 1630.2(r)(2); *see Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 86 (2002). In view of this inquiry, what Plaintiff describes as prejudice is more akin to probative value: the evidence is undeniably informative regarding the potentially disastrous consequences of sudden incapacitation in a train-crew position. Next, Plaintiff's reliance on the differing medical conditions is a red herring. Defendant has consistently maintained that it places considerable emphasis on the *risk* of sudden incapacitation—not the specific medical condition that may cause sudden incapacitation.

### D. Plaintiff's Employment with Gale Insulation

Plaintiff was employed with Gale Insulation from 1993 to approximately 2013. He was terminated for taking his company vehicle home in violation of the company's standard operating procedures. Plaintiff applied to work at BNSF Railway Company in late 2013, indicating on his application that he was "laid off" from Gale Insulation. Subsequently, Plaintiff applied for a position with Defendant, indicating on his application that he left Gale Insulation due to "downsizing." Following the revocation of his job offer with Defendant, Plaintiff applied at United Subcontractors, Inc., indicating on his application that he left Gale Insulation due to an "SOP violation."

Plaintiff appears to concede that his "downsizing" statement to Defendant is admissible. He also appears to concede that the fact that he was terminated for violating company policy is admissible. He contends, however, that his statements to other employers about his departure from Gale Insulation are inadmissible. He argues that the statements are irrelevant or have only limited relevance that is substantially outweighed by a risk of unfair prejudice, and that the statements constitute improper character or habit evidence under Federal Rule of Evidence 404(b). Defendant argues that Plaintiff's statements to other employers are admissible impeachment evidence within the scope of Federal Rule of Evidence 608(b).

The motion will be granted. The parties concede the admissibility of evidence that Plaintiff was terminated for violating Gale Insulation's policies and concealed that fact

from Defendant.  This after-acquired evidence will be admissible only in the damages phase of the trial.  Statements that Plaintiff made to other employers about his termination, however, are largely irrelevant.  Whatever slight probative value the statements have towards impeachment is substantially outweighed by the risk of prejudice.  *See* Fed. R. Evid. 403.

### E.    Plaintiff's Termination from United Subcontractors, Inc.

Shortly after having his offer of employment with Defendant revoked, Plaintiff began employment at United Subcontractors, Inc.  Plaintiff was terminated several months later.  Plaintiff acknowledges that his termination could be relevant to whether he mitigated damages after being denied employment with Defendant.  He contends that any such relevance is low, however, since he actively tried to reenter the workforce, and his termination was due to a lack of revenue, not violation of company rules.  He also contends that the limited probative value of his termination is substantially outweighed by the risk of prejudice and misleading and confusing the jury.

Defendant argues that Plaintiff's termination is relevant to whether he exercised "reasonable diligence" in seeking and maintaining new employment.  Defendant disputes Plaintiff's assertion that he was terminated due to a lack of revenue because documents obtained from United Subcontractors, Inc. indicate that Plaintiff was terminated for poor performance and that Plaintiff is ineligible for rehire.  Defendant contends that termination due to poor performance, like termination for violating company rules, is relevant to whether a plaintiff mitigated damages.

The motion will be denied.  The evidence is relevant to whether Plaintiff mitigated damages.  *See Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 230–32 (1982) (describing duty of discrimination plaintiffs "to use reasonable diligence in finding other suitable employment").  Plaintiff's salary at United Subcontractors, Inc. was purportedly higher than his first-year salary with Defendant would have been.  A factfinder could reasonably find that Plaintiff failed to mitigate damages by losing a higher-paying job due to poor performance.  *Cf. Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1279 (4th Cir. 1985)

1  (finding lack of reasonable diligence where plaintiffs were terminated from new
2  employment for violating company rules).  Any risk of prejudice posed by the evidence
3  does not substantially outweigh the evidence's probative value.

4  Because the evidence is relevant only to damages, Defendant may present it only
5  during the damages phase.  This effectively eliminates the risk that the jury would be
6  confused or misled.

7  **III.  Defendant's Motions in Limine**

8      **A.  Plaintiff's Military Service**

9  Defendant argues that Plaintiff should be precluded from referring to his military
10 service because it is irrelevant to any fact of consequence.  Plaintiff argues that his military
11 service is relevant to whether he is a "qualified individual" under the ADA, since it was
12 disclosed to Defendant as part of his employment history.

13 Defendant's motion will be denied.  Plaintiff may testify generally as to his military
14 background, which has at least some relevance to whether he was qualified for the train-
15 crew position.  Such testimony poses no risk of prejudice.

16     **B.  Requirement that Defendant Personally Examine Plaintiff**

17 Defendant uses a third-party medical examiner to conduct in-person examinations
18 of applicants.  The law does not require Defendant to conduct examinations itself.  Thus,
19 Defendant seeks to preclude Plaintiff from arguing that Defendant is itself required to
20 conduct in-person examinations, as any such argument would misstate the law and confuse
21 the jury.  Plaintiff responds that the fact Defendant does not conduct its own examinations
22 is relevant to the reliability of Defendant's medical assessments.

23 The motion will be granted in part and denied in part.  Plaintiff will be precluded
24 from arguing that Defendant is *required* to conduct in-person medical examinations, as the
25 law contains no such requirement.  However, the Court agrees with Plaintiff that
26 Defendant's reliance on a third-party to conduct such examinations is relevant to the
27 soundness of Defendant's medical assessment and resulting employment decision.  That
28 Defendant may legally use a third-party medical examiner is easily communicated to the

jury and thus presents no risk of confusion.

### C. GINA Disclaimer and Receipt of Genetic Information

In its request for Plaintiff's medical records, Defendant did not include an explicit disclaimer to redact genetic information. Although GINA provides suggested disclaimer language, use of such language is not required. Defendant requests that Plaintiff be precluded from referencing the disclaimer language or the fact that Defendant did not use it. Defendant argues that any such reference would confuse and potentially prejudice the jury. Plaintiff argues that it is "essential" that the jury hear about the disclaimer language because it is the first step in a two-step analysis.

This request will be granted. Under GINA, an employer who uses the specified disclaimer language is absolved of any liability. 29 C.F.R. § 1635.8(b)(1)(i)(B). If the employer does not use the disclaimer, it can still clear itself of liability by showing the "request for medical information was not 'likely to result in a covered entity obtaining genetic information.'" *Id.* § 1635.8(b)(1)(i)(C). Because there is no dispute that Defendant did not use the disclaimer, the sole issue is whether Defendant's request was likely to result in the receipt of genetic information. This is a straightforward issue that is easily understood without reference to the disclaimer language. Therefore, the relevance of the disclaimer language is very low and substantially outweighed by the risk of confusing and misleading the jury. *See* Fed. R. Civ. 403.

Defendant also requests that Plaintiff be precluded from arguing that Defendant received and relied on genetic information. Plaintiff admitted that Defendant did not rely on genetic information in making its employment decision, so that request will be granted. (Doc. 60, ¶ 66; Doc. 66, ¶ 66.) With respect to whether Defendant received genetic information, its motion will be denied. Although the Court understood Plaintiff's claim to be focused on the request for medical information, Plaintiff has never conceded that Defendant did not receive genetic information.

### D. Safety as an Essential Function of a Train-Crew Position

In ruling on summary judgment, the Court found that "safety is an essential function

of a train[-]crew position" and that "there is a triable issue of fact whether Plaintiff can perform that function." (Doc. 70 at 9.) Defendant argues that Plaintiff should be precluded from arguing that safety is not an essential function. Plaintiff acknowledges the Court's finding but argues that neither the parties nor the Court has articulated what "safety" means in the context of a train-crew position. Plaintiff contends that he must be allowed to explore and, if necessary, criticize Defendant's definition of "safety" in the train-crew position.

The motion will be denied as moot. The parties' positions are not inconsistent. Plaintiff acknowledges the Court's ruling that it is not enough to be able to perform the physical tasks associated with a train-crew position, but rather it is an essential function of the position that such tasks be performed safely. What makes performance "safe" has not been briefed or decided, however, so Plaintiff may explore that issue at trial.[2]

### E.     Nonparties' Employment Experiences with Defendant

Plaintiff's friend, who works for Defendant in a train-crew position, told Plaintiff that the train-crew position was similar to Plaintiff's then-current job as a trainee conductor with BNSF Railway Company. Defendant requests that Plaintiff be precluded from testifying as to the friend's description of the train-crew position because the testimony (1) would be hearsay, (2) would not be based on personal knowledge, and (3) would confuse the issues and waste time, as Defendant will itself present evidence establishing the position's essential functions. Plaintiff argues that the evidence would not be hearsay because it would be offered to show why Plaintiff applied for a train-crew position, not to establish the functions of the position.

The motion will be granted in part and denied in part. The testimony is admissible only to provide context for Plaintiff's decision to apply for a position with Defendant. This would not be hearsay, as it would be only to show the effect of the statement on Petitioner. *See United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019). However, Plaintiff may not testify as to what his friend (or anyone else) told him about the specific functions of a train-

---

[2]     By criticizing Defendant's representation of what "safe" performance entails, Plaintiff may open the door for Defendant to introduce rebuttal evidence of the potential consequences or types of accidents that could occur if a lesser standard were required.

crew position. Plaintiff offers no non-hearsay purpose for such testimony and concedes that other evidence will establish the position's functions.

**F.    Plaintiff's Out-of-State Driver's Licenses and Medical Examinations**

Plaintiff has Commercial Driver's Licenses ("CDL") issued by Arizona and North Dakota. Defendant argues that evidence relating to the CDLs should be ruled inadmissible because the requirements for obtaining state-issued CDLs varies by state, as opposed to interstate CDLs, which require medical certifications that satisfy federal guidelines. Defendant argues there is a substantial risk that the jury will confuse the requirements for obtaining state-issued CDLs with the federal guidelines on which Defendant based its employment decision. Furthermore, Defendant argues, because Plaintiff does not know each state's requirements and has identified no witnesses that could testify as to the requirements, Defendant has no method of distinguishing the state and federal standards.

Plaintiff responds that his CDLs are relevant to whether he was qualified for a train-crew position. He asserts, as an example, that North Dakota requires CDL applicants to satisfy federal medical requirements.

The motion will be denied. Plaintiff's CDLs are relevant to whether he was qualified for the train-crew position. Although there is a risk of jury confusion, that risk does not substantially outweigh the probative value of Plaintiff's CDLs. Defendant is free to argue that such evidence is inconsequential because Plaintiff lacks knowledge of how the state standards compare to the federal standards.

**G.    Plaintiff's Subsequent Medical Condition**

Plaintiff suffered no rebleeds, seizures, or other neurological events following Defendant's decision to rescind its offer of employment. Defendant argues that because its direct-threat defense must be analyzed based on information available at the time of the employment decision, the foregoing evidence is not only irrelevant but also highly prejudicial, as it would give the jury the luxury of hindsight that Defendant did not have when considering Plaintiff's future risk. Plaintiff argues that the evidence is relevant to the severity of his condition as well as Defendant's perception of his future risk.

1   The motion will be granted.  The evidence is probative towards the overall severity

2   of Plaintiff's condition and thus towards Defendant's medical assessment.  However, the

3   risk that the jury would improperly scrutinize Defendant's employment decision with the

4   benefit of hindsight is high and substantially outweighs the evidence's probative value.[3]

5   **H.      Effect of 1% Policy on Disabled Individuals**

6       Defendant seeks to preclude Plaintiff from arguing that Defendant's 1% policy

7   adversely affects disabled individuals at disproportionate rates, contending that Plaintiff

8   lacks evidence that the policy has such an effect.  Defendant argues that, in the absence of

9   such evidence, Defendant's treatment of other employees is irrelevant to its decision to

10  revoke the offer of employment to Plaintiff.  Defendant also argues there would be

11  prejudice and undue delay, since "mini-trials" would be necessary to determine whether

12  Defendant's treatment of other employees or applicants was proper.

13      Plaintiff responds that he has evidence of the 1% policy's disproportionate effect on

14  disabled individuals.  He points to Dr. Holland's testimony that the policy is broadly

15  applicable to all individuals who have a risk of sudden incapacitation greater than 1%.  He

16  also points to the Federal Motor Carrier Safety Administration handbook, upon which the

17  1% policy is based, highlighting that the handbook lists many disabling medical conditions

18  that are subject to restrictions.  Plaintiff also asserts that the medical experts in this case

19  have opined on how the risk of sudden incapacitation for someone with Plaintiff's medical

20  condition compares to the "average" individual.

21      The motion will be denied without prejudice.  Defendant's complaint is that Plaintiff

22  lacks evidence of the 1% policy's effect.  Plaintiff asserts that he does have evidence.  He

23  may present his case and make any argument he desires, so long as his arguments are

24  supported by the evidence.  Defendant may raise foundation and other appropriate

---

25      [3]      This ruling is not inconsistent with permitting Defendant to present the 2017

26  meta-analysis.  As explained above, although the meta-analysis was not available at the
    time of Defendant's employment decision, Plaintiff has not established that the body of

27  medical knowledge contained in the meta-analysis is beyond the medical knowledge that
    existed at the time of the decision.  Furthermore, the meta-analysis is relatively innocuous

28  and presents a much lower risk of prejudice than evidence of Plaintiff's subsequent good
    health.  The risk of prejudice associated with the meta-analysis does not substantially
    outweigh that evidence's probative value.

objections during trial if necessary. At this time, however, the Court disagrees that evidence or argument regarding the 1% policy's effect will cause prejudice or undue delay.

## I. Opinions of Unfair Treatment or Violation of Law

Defendant seeks to preclude Plaintiff and other witnesses from testifying to their subjective opinions that Defendant treated Plaintiff unfairly or in a discriminatory manner. Defendant argues such testimony would not be helpful to the jury and would infringe on the jury's function to decide the facts. Plaintiff argues that this opinion testimony would be helpful to understanding the witnesses' testimony as a whole, including Plaintiff's testimony about his emotional distress.

The motion will be granted. Lay witnesses may testify to facts based on their personal knowledge. They may not provide subjective opinions that Defendant's conduct was unfair or illegal. Such opinion testimony is neither helpful to understanding the witness's testimony nor helpful to determining a fact in issue. *See* Fed. R. Evid. 701; *Beeber v. Norfolk S. Corp.*, 754 F. Supp. 1264, 1369 (N.D. Ind. 1990) (distinguishing between railroad worker's admissible statements based on personal knowledge and inadmissible legal conclusions). Furthermore, the evidence poses a risk of prejudicing, confusing, and misleading the jury, which substantially outweighs whatever slight relevance the evidence has. *See United States v. Beck*, 418 F.3d 1008, 1013–14 (9th Cir. 2005) (applying Rule 403 to lay testimony); *United States v. Ness*, 665 F.2d 248, 250 (8th Cir. 1981) ("The danger here is that the jury could easily accord too much weight to the pronouncement of a lay witness unfamiliar with the standards erected by the criminal law, whose statement may be charged with the emotionalism of a person coming to the rescue of an embattled co-worker."). The Court will instruct the jury on the law. It is the jury's function to determine the facts in view of the law.

## J. Other Lawsuits against Defendant

Defendant seeks to preclude Plaintiff from introducing evidence of other pending cases involving claims of disability discrimination against Defendant. Defendant argues the evidence is irrelevant hearsay and would serve only to confuse or prejudice the jury.

Plaintiff argues that evidence of the other lawsuits is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See* Fed. R. Evid. 404(b). He contends that the lawsuits, which involve disabled individuals challenging the same set of medical policies, are relevant to proving Defendant's motive and intent, especially with respect to whether the 1% policy constitutes unlawful screening.

The motion will be granted. The evidence has limited, if any, relevance to Defendant's motive or intent, or to the lawfulness of Defendant's 1% policy. The cases cited by Plaintiff, all of which are pending, involve mere allegations against Defendant, not facts that could be used to establish motive or intent. *See Duran v. City of Maywood*, 221 F.3d 1127, 1132–33 (9th Cir. 2000) (per curiam) (stating that "'other act' evidence is admissible under Rule 404(b) if," among other things, there is "sufficient proof for the jury to find that the defendant committed the other act").

Furthermore, to the extent the lawsuits are relevant, the relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and undue delay. For example, the jury might unfairly conclude that Defendant is liable in this case merely because there are many similar lawsuits pending against Defendant. And, if Plaintiff were allowed to present evidence of the nature of those lawsuits, Defendant must be allowed to defend itself with rebuttal evidence. This would confuse the issues and needlessly prolong the trial.

**IT IS ORDERED:**

1. Plaintiff's Motion in Limine to Exclude Arguments and Questioning About Whether Montgomery is Disabled (Doc. 80) is **denied**.

2. Plaintiff's Motion in Limine to Exclude Evidence of or Testimony Related to the 2017 Meta-Analysis (Doc. 81) is **denied**.

3. Plaintiff's Motion in Limine to Exclude Evidence of Train Accidents (Doc. 82) is **denied**.

    a. Defendant may present evidence of train accidents caused by sudden

incapacitation.  The evidence is limited to official reports prepared by the National Transportation Safety Board.  (*See* Doc. 95-1.)

4.  Plaintiff's Motion in Limine to Exclude Evidence of Montgomery's Employment with Gale Insulation (Doc. 83) is **granted**.

    a.  During the damages phase of trial, Defendant may present evidence (1) that Plaintiff was terminated from Gale Insulation for violating company policy, and (2) that Plaintiff misrepresented the reason for his departure from Gale Insulation in his application for employment with Defendant.  Evidence of statements made by Plaintiff about Gale Insulation to other parties is inadmissible.

5.  Plaintiff's Motion in Limine to Exclude Evidence or Testimony Related to Montgomery's Termination from USI (Doc. 84) is **denied**.

    a.  During the damages phase of trial, Defendant may present evidence relating to Plaintiff's termination from United Subcontractors, Inc.

6.  Defendant's Motion in Limine (Doc. 85) is **granted in part and denied in part** as follows:

    a.  Plaintiff may testify generally about his military service.

    b.  Plaintiff may not argue that Defendant is required to conduct in-person medical examinations of applicants.  Plaintiff may argue that Defendant's reliance on a third-party medical examiner lessens the soundness of Defendant's medical assessment.

    c.  Plaintiff may not refer to the proposed disclaimer language set forth in 29 C.F.R. § 1635.8(b)(1)(i)(B) or to the fact that Defendant did not use such language.  Plaintiff may not argue that Defendant relied on genetic information when making its employment decision.  Plaintiff may argue that Defendant received genetic information.

    d.  Plaintiff may explore the issue of what "safe" performance of a train-crew position entails.

e.     Plaintiff may testify as to his friend's statement that Defendant's train-crew position is similar to Plaintiff's then-current job with BNSF Railway Company, only to provide context for why Plaintiff applied for a train-crew position. Plaintiff may not testify to his friend's (or anyone else's) description of the functions of a train-crew position.

f.     Plaintiff may present evidence that he has state-issued Commercial Driver's Licenses.

g.     Plaintiff may not offer evidence that he suffered no rebleeds, seizures, or other neurological events following Defendant's employment decision.

h.     Plaintiff may offer evidence regarding the 1% policy's effect and argue, if the evidence supports it, that the policy disproportionately affects disabled individuals. Defendant may raise foundation and other appropriate objections at trial, if it wishes to do so.

i.     Lay witnesses may testify to facts based on their personal knowledge. They may not testify as to their subjective opinions regarding the fairness or legality of Defendant's conduct.

j.     Plaintiff may not offer evidence of or refer to other disability-discrimination lawsuits pending against Defendant.

Dated this 23rd day of April, 2019.


_____
Honorable Rosemary Márquez
United States District Judge